**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THEODORE A. FATH, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DRIVE CLEAN MANAGEMENT, LLC, )<br>d/b/a Boomerang Carwash, an Arkansas )<br>limited liability company, )<br>)<br>Defendant. ) | Case No. 14-CV-0600-CVE-FHM |

**OPINION AND ORDER**

Before the Court is defendant's motion for summary judgment (Dkt. # 34). Plaintiff alleges that his termination from defendant's employ was the result of disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12010 et seq. (ADA). Dkt. # 1, at 4. Defendant seeks summary judgment pursuant to Fed. R. Civ. P. 56, arguing that plaintiff can neither establish a prima facie case of discrimination nor show that defendant's proffered reason for termination was pretextual. Dkt. # 34, at 15. Defendant also argues that plaintiff should be precluded from recovering any form of wage damages after October 2014 because of his failure to mitigate damages. Id. at 24. Plaintiff responds that the facts, when viewed most favorably toward him, both establish a prima facie case and demonstrate pretext. Dkt. # 46, at 13, 16. Defendant has filed a reply. Dkt. # 47.

**I.**

Plaintiff was born with achondroplasia dwarfism, Dkt. # 46-2, at 3; he stands less than four feet tall. Dkt. # 46-4, at 3. In 2013, when he was sixteen years old, plaintiff applied for a position at defendant's car wash location in Broken Arrow, Oklahoma (the car wash). See Dkt. # 34, at 10; Dkt. # 46-2, at 2. Henry Hamilton, then the manager of the car wash, hired plaintiff on June 14,

2013. Dkt. # 46, at 9. Plaintiff worked as a part-time "attendant." Id. Attendants' duties were divided between "loading" vehicles into the automated car wash, which included carrying out pre-wash inspections of the vehicles, and performing "marketing" activities, such as holding promotional signs to attract customers. Id. at 10. Hamilton trained plaintiff to perform both types of duty. Dkt. # 46, at 9.

At some point on or before August 2, 2013, Dwayne Thomas, defendant's chief operating officer, visited the car wash. Dkt. # 34-4, at 2. During the visit, Thomas observed plaintiff performing loading duties inside the car wash. Dkt. # 34-4, at 2. Thomas believed, based on prior conversations with Hamilton, that plaintiff would be restricted to the marketing duties of the attendant position. Id. Thomas felt that it was not safe for plaintiff to work in the car wash itself, given his stature. Id. Thomas immediately approached Hamilton and "took steps to remove [plaintiff] from the line at that time." Dkt. # 46-3, at 4. Plaintiff continued to be employed and to receive assigned work shifts, albeit not performing loading duties. Dkt. # 46-2, at 5.

Hamilton remained the manager of the car wash until August 2, 2013. Dkt. # 46-1, at 38. During that time, the car wash received visits from several of defendant's management-level employees, including managers of other local car wash locations as well as defendant's sales manager and regional manager. Id. at 4-13, 18-19. According to Hamilton, these individuals made remarks about plaintiff that Hamilton interpreted as discriminatory, such as laughing at plaintiff's height or referring to him as "a midget." Id. at 9. Plaintiff testified that he was unaware of these statements during his employment. Dkt. # 47-1, at 8. On August 2, 2013, Hamilton was demoted to assistant manager and transferred to another store. Dkt. # 46-1, at 38. At some point after his

2

demotion and transfer, Hamilton entered into a romantic relationship with plaintiff's mother. Dkt. # 46-4, at 2.

Amy Reinhofer,[1] formerly Hamilton's assistant manager, was promoted to manager of the Broken Arrow car wash location. Dkt. # 46, at 10. Initially, Reinhofer assigned plaintiff work shifts but did not allow him to perform loading duties. Dkt. # 46-2, at 5. At some point, Reinhofer began reducing the shifts that plaintiff was assigned to work; by late August 2013, plaintiff was being assigned no shifts. Dkt. # 46, at 10. Plaintiff remained employed but continued to receive no assigned shifts in September 2013 and most of October 2013. Id. During this period, plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission (EEOC). Dkt. # 46-2, at 8.

In late October 2013, Thomas called plaintiff to talk about plaintiff's employment. Dkt. # 34-4, at 11. The two discussed how plaintiff had not been assigned a shift for some time, although he remained an employee. Dkt. # 34-5, at 17. Thomas told plaintiff that he had been assigned a shift for a certain date during the following week, and that failure to appear on that day would result in termination. Id. Plaintiff reported that, during the conversation, Thomas seemed aggressive, and he made what plaintiff perceived as a threat to sue plaintiff for slander based on plaintiff's EEOC claim. Dkt. # 46-2, at 8. Plaintiff testified that he felt that returning to work "could be setting [himself] up for retaliation." Dkt. # 47-1, at 6. However, plaintiff did not discuss these concerns with defendant. Id. at 7. Plaintiff did not appear on the date he was scheduled to work, and that day Reinhofer completed the paperwork authorizing his termination. Dkt. # 34-9.

---

[1] Defendant refers to this individual as "Amy Reinhofer," Dkt. # 34, at 12, while plaintiff refers to her as "Amy Rinehart." Dkt. # 46, at 8. The evidence presented is unclear as to this individual's last name. See Dkt. # 47-3, at 11. The Court will refer to her as "Reinhofer."

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Because plaintiff contends that defendant terminated his employment solely because of his disability, plaintiff has presented a claim of disparate-treatment discrimination under the ADA. See Davidson v. Am. Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003). Such claims may be proved either by presentation of direct evidence of discrimination, see Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 n.3 (10th Cir. 1997), or using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Hawkins v. Schwan's Home Serv., Inc., 778 F.3d 877, 883 (10th Cir. 2015). Both parties proceed directly to the burden-shifting analysis.[2] See Dkt. # 34, at 15, Dkt. # 46, at 13.

> Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." Once the plaintiff has established a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its

---

[2] Plaintiff argues, as part of the burden-shifting analysis, that Hamilton's testimony about the statements of defendant's management-level employees "constitute[s] clear and compelling evidence of Defendant's intentional discrimination against Plaintiff due to his disability." Dkt. # 46, at 18. It is unclear if plaintiff intends to argue that Hamilton's testimony is direct evidence of discrimination, obviating the need for the burden-shifting analysis. Regardless, the Tenth Circuit has repeatedly stated that "specific instances of discriminatory statements, from which [a plaintiff] then argue[s] the determining cause of the employment decision may be inferred," should not be confused with direct evidence. Furr v. AT&T Tech., Inc., 824 F.2d 1537, 1549 (10th Cir. 1987); see also Hall v. U.S. Dep't of Labor, Admin. Review Bd., 476 F.3d 847, 854-55 (10th Cir. 2007); Ramsey v. City & Cnty. of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990). Where a fact-finder must infer from a statement that a defendant acted with discriminatory intent, the statements are not direct evidence of discrimination. See Hall, 475 F.3d at 855 ("Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements."). Thus, Hamilton's reports of others' allegedly discriminatory statements are not direct evidence of discrimination.

5

> employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000) (citations omitted). Defendant argues that summary judgment should be granted because plaintiff can neither establish a prima facie case of disability discrimination nor show pretext. Dkt. # 34, at 15. Plaintiff responds that it can satisfy its burden under McDonnell Douglas, making summary judgment inappropriate. Dkt. # 46, at 13.

The parties vigorously dispute whether plaintiff can establish a prima facie case of disability discrimination. See Dkt. # 34, 16-22; Dkt. # 46, at 13-15. However, the Court need not decide the issue to resolve defendant's motion, and so the Court will assume, for this opinion only, that plaintiff can establish a prima facie case. Cf. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005) (noting that the burden of establishing a prima facie case is "not onerous" (citing McCowan v. All Star Maint., Inc., 273 F.3d 917, 922 (10th Cir. 2001))). Defendant states that it terminated plaintiff because of his failure to report for work after being assigned a shift and told the consequences of not appearing. Dkt. # 34, at 22. Plaintiff does not dispute that this is a "legitimate, nondiscriminatory reason" for terminating his employment. See Dkt. # 46, at 15. Thus, the analysis proceeds to the final step of the McDonnell Douglas analysis, where it is plaintiff's burden to show that defendant's reason is pretextual. Kendrick, 220 F.3d at 1226.

"A plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . .'" Plotke, 405 F.3d at 1102 (quoting Morgan, 108 F.3d at 1323).

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Kendrick, 220 F.3d at 1230 (citations omitted). Evidence of pretext is not limited to these three methods but "may also take a variety of other forms." Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1168 (10th Cir. 2007). The Court must "examine the facts as they appear[ed] to the person making the decision." E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1044 (10th Cir. 2011) (emphasis in original) (quoting Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1166 (10th Cir. 2007)). In order to defeat a motion for summary judgment, a plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual--i.e., unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Plaintiff argues that the evidence, when viewed in the light most favorable to him, demonstrates pretext in five ways. First, plaintiff contends that Thomas's deposition testimony is inconsistent with defendant's stated reason for terminating plaintiff. Dkt. # 46, at 15. Second, plaintiff argues that he knew, from Thomas's statements and Reinhofer's scheduling decisions, that defendant "did not want him in the Carwash." Id. at 17-18. Third, plaintiff argues that Hamilton's deposition testimony provides "clear and compelling evidence of Defendant's intentional discrimination against Plaintiff due to his disability." Id. at 18. Fourth, plaintiff asserts that defendant's asserted reason for termination is inconsistent with a position that it took in answering plaintiff's interrogatories. Id. at 17. Finally, plaintiff argues in a footnote that the "evidence that he

could perform the essential functions of an attendant position constitutes evidence of pretext." Id. at 16 n.3.

The evidence does not support plaintiff's first argument, that his termination was pretextual because Thomas's deposition testimony was inconsistent with defendant's stated reason for termination. Thomas, observing plaintiff performing loading duties, told Hamilton that he had safety concerns about plaintiff working inside the car wash itself. Dkt. # 46-3, at 4-5. Based on prior conversations with Hamilton, Thomas believed that plaintiff had been hired primarily to undertake marketing activities. Id. at 3. Thomas then "took steps to remove [plaintiff] from the line," even though Hamilton believed that plaintiff could safely perform loading duties. Id. at 4. Plaintiff makes much of this conversation, asserting that Thomas's statements and actions are inconsistent with defendant's stated reason for terminating plaintiff. Dkt. # 46, at 15. However, the conversation and accompanying actions reveal no inconsistency. First, the conversation between Thomas and Hamilton and Thomas's subsequent actions took place prior to Hamilton's demotion on August 2, 2013. See Dkt. # 34-8, at 1. At that point, plaintiff had not refused to report for work, and he would not do so for several more months. Dkt. # 34-4, at 11. The statements thus have little apparent connection to the decision to terminate plaintiff. Second, and more importantly, the statements simply would not allow a reasonable factfinder to infer that plaintiff's termination was a pretext for discrimination, on the basis of plaintiff's disability or for any other reason. Thomas said he "took steps to remove [plaintiff] from the line at that time." Dkt. # 46-3, at 4 (emphasis added). Thomas sought to require plaintiff to be employed only as part of defendant's marketing activities, in accordance with his understanding of plaintiff's hiring. Id. at 3. Implicit in these statements and actions is the belief that plaintiff should remain in defendant's employ, albeit in a different capacity

than plaintiff may have wished. Plaintiff admits that he continued to receive shifts, even though he was restricted from performing loading duties. Dkt. # 46-2, at 5. As such, there can be no real argument that Thomas's actions or statements address, much less are inconsistent with, defendant's stated reason for terminating plaintiff.

Plaintiff's second argument is that pretext can clearly be seen in Thomas's and Reinhofer's treatment of plaintiff. Dkt. # 46, at 17. He points to the following: Thomas requiring that plaintiff be employed for marketing duties only; Reinhofer reducing plaintiff's assigned shifts, to the point that he was not assigned a shift from late August 2013 to late October 2013; and Thomas threatening plaintiff with a slander suit for filing an EEOC claim. Id. at 17-18. However, it is unclear how any of these acts, either individually or together, could show that defendant's proffered reason for terminating plaintiff is "unworthy of credence." Plotke, 405 F.3d at 1102. Requiring plaintiff to be assigned marketing duties, as discussed above, has no bearing on plaintiff's termination, as any reassignment or reallocation of job duties perforce demands the employee remain employed. Cf. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1223 (10th Cir. 2000) (stating that courts should "not . . . act as a super personnel department that second guesses employers' business judgments"). As to scheduling, regardless of the events surrounding any reduction in plaintiff's assigned shifts--and there are factual disputes on that point, see Dkt. # 34, at 8 n.1--plaintiff remained employed during the period in which he was given no shifts. See Dkt. # 34-4, at 11. According to plaintiff, Thomas told him in late October 2013 that he had been put on the work schedule and that failure to report for work would result in his termination. Dkt. # 34-5, at 17. Defendant's stated reason for terminating plaintiff is that, despite being informed of the consequences, plaintiff did not appear for work at the scheduled time. Dkt. # 34, at 22; see also Dkt.

9

# 34-9. The fact that plaintiff's shifts may have been reduced in the intervening period does not show pretext as to the reason given for plaintiff's termination, because plaintiff was assigned a work shift and was not terminated until after he chose not to report for work. Likewise, the fact that defendant may have contemplated legal action against plaintiff does not create a "genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual--i.e., unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). Even if defendant was contemplating a slander suit against plaintiff, Thomas made sure that plaintiff both received a shift to work and knew of the shift. Dkt. # 34-5, at 17. Plaintiff chose not to report for work on the assigned date. Dkt. # 34-9. While Thomas's statement may have led to plaintiff's fears of retaliation if he returned to work, he did not share that concern with defendant or Thomas, Dkt. # 47-1, at 6-7, and the pretext analysis is based on "the facts as they appear[ed] to the person making the decision." E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1044 (10th Cir. 2011) (emphasis in original). Thus, any fears of retaliation on plaintiff's part do not create a "genuine dispute of material fact" to show that defendant's proffered reason for terminating plaintiff is "unworthy of belief." Randle, 69 F.3d at 451. The actions of Thomas and Reinhofer do not demonstrate that defendant's stated reason for terminating plaintiff's employment was pretextual.

For his third argument, plaintiff contends that "Hamilton's deposition testimony and out-of-court statements to Thomas and Plaintiff constitute clear and compelling evidence of Defendant's intentional discrimination against Plaintiff due to his disability." Dkt. # 46, at 18. He then goes on to argue that Hamilton's testimony is admissible under Fed. R. Evid. 801(d)(2)(D), which defines statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" as not hearsay. Plaintiff does not identify which part of Hamilton's testimony

purportedly demonstrates defendant's intentional discrimination. Cf. FED. R. CIV. P. 56(c)(1)(A) (requiring a party to support its position by "citing to particular parts of materials in the record"). Presumably, plaintiff refers to Hamilton's reports of his conversations with other management-level employees. E.g. Dkt. # 46-1, at 9 (describing how defendant's sales marketing manager referred to plaintiff as a "midget"). The opinions of non-decisionmakers are not material to whether defendant's stated reason for terminating plaintiff was pretextual. See Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273, 1287 (10th Cir. 2003) ("[A]ge-related comments by non-decisionmakers are not material in showing the [defendant's] action was based on age discrimination . . . ." (quoting Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994))). Therefor, the statements of the managers of other car wash locations and of defendant's regional manager and sales marketing manager are insufficient to demonstrate pretext. Hamilton did report interactions with Thomas, the relevant decisionmaker,[3] in which Thomas "gave little remarks letting me know, not directly, but indirectly, how a person does, that he didn't believe that -- that [plaintiff] should be there." Dkt. # 46-1, at 11. When asked to explain, however, Hamilton stated that his testimony referred to Thomas's belief that plaintiff was not capable of safely performing an attendant's loading duties. Id. at 11-13. He further testified that Thomas never "use[d] any inappropriate words to describe [plaintiff]." Id. at 11. Hamilton did not report that Thomas felt that plaintiff should be terminated because he could not safely undertake an attendant's loading duties. Thus, Hamilton's deposition

---

[3] Both plaintiff and defendant assume without argument that Thomas was the relevant decisionmaker, see Dkt. # 46, at 16-17; Dkt. # 47, at 6, despite Reinhofer actually completing the termination paperwork. See Dkt. # 34-9. The Court has been presented with no evidence that Reinhofer ever made disparaging statements to or about plaintiff. The Court will assume, for purposes of this opinion only, that Thomas was the relevant decisionmaker as to plaintiff's termination.

11

testimony about Thomas's statements show only that Thomas believed that plaintiff's duties should be limited, not that plaintiff should be terminated. As such, no reasonable factfinder would conclude that Thomas's statements evidence pretext for discrimination.

Next, plaintiff asserts that pretext may be seen in the inconsistency between defendant's interrogatory responses and its reason for termination. Dkt. # 46, at 17. In responding to an interrogatory about the reduction of plaintiff's shifts, defendant asserted that Hamilton had given plaintiff preferential treatment because of Hamilton's relationship with plaintiff's mother. Dkt. # 46-5, at 3. According to plaintiff, the evidence shows that any relationship between Hamilton and plaintiff's mother did not begin until after Hamilton was demoted and transferred. Dkt. # 46, at 17. Even assuming that plaintiff is correct that defendant's interrogatory response is inconsistent with the other evidence presented, the inconsistency has no bearing on or connection to plaintiff's termination, the adverse action of which he has complained. Thus, the inconsistency does not show pretext in defendant's decision to terminate plaintiff. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995) (noting that a plaintiff must show "a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual" (emphasis added)).

Lastly, plaintiff states in a footnote that "evidence that he could perform the essential functions of an attendant position constitutes evidence of pretext." Id. at 16 n.3. The ability to perform the essential functions of a position is one of the elements of a prima facie case of discrimination, and the Court has already assumed that plaintiff can make such a showing. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). However, simply establishing a prima facie case cannot, on its own, be enough to demonstrate pretext, as that would collapse the first and third stages of the McDonnell-Douglas analysis into a single inquiry and deprive defendant of any

meaningful ability to rebut plaintiff's prima facie case. Thus, plaintiff's ability to show that he could perform the essential functions of his position cannot, on its own, suffice to show that plaintiff's stated reason for terminating him was a pretext for disability discrimination.

Under the McDonnell Douglas framework, the burden rests on the plaintiff to show that defendant's otherwise-legitimate justification for termination was a pretext for unlawful discrimination. Despite plaintiff's arguments to the contrary, the evidence related to plaintiff's termination conforms to defendant's stated explanation. Plaintiff has failed to advance any other theory "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . .'" Plotke, 405 F.3d at 1102 (quoting Morgan, 108 F.3d at 1323). Thus, plaintiff has not carried his burden to demonstrate that defendant's stated justification for terminating him was pretextual. The Court grants summary judgment in favor of defendant as to plaintiff's claim for disability discrimination under the ADA.[4]

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 34) is hereby **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's first motion in limine (Dkt. # 28), second motion in limine (Dkt. # 29), and third motion in limine (Dkt. # 30) are hereby **moot**.

**DATED** this 5th day of August, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court grants summary judgment in favor of defendant, the Court need not address defendant's arguments that plaintiff not be allowed to recover certain types of wage damages.